UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**

**OCT 2 8 2009**

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

STANLEY BRYAN LAWRENCE,

      Debtor.

_____/

Case No. 6:08-bk-00961-ABB
Chapter 7

ALAN CURRELI,

      Plaintiff,

vs.

STANLEY BRYANT LAWRENCE,

      Defendant.

_____/

Adv. Pro. No. 6:08-ap-00083-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Complaint for Exception to Discharge (Doc. No. 1) ("Complaint") filed by the Plaintiff Alan Curreli ("Plaintiff") against Stanley B. Lawrence, the Debtor and Defendant ("Debtor"), requesting an alleged indebtedness of $42,966.95 be deemed nondischargeable pursuant to 11 U.S.C. Section 523(a)(4). A final evidentiary hearing was held on September 22, 2009 at which the Debtor, Plaintiff, and their respective counsel appeared. Plaintiff, pursuant to the Court's directive, filed a post-hearing brief (Doc. No. 30). The Debtor did not file a brief.

Judgment is due to be entered in favor of the Debtor and against Plaintiff for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *PSCP, LLC*

The Debtor and Plaintiff formed PCSP, LLC ("PCSP"), a Florida limited liability company, in April 2006 for the purposes of leasing and operating a motorsports speedway in Putnam County, Florida.  The parties agreed:  (i) they would each have a fifty percent membership interest in PCSP; (ii) the Debtor would be the President and handle the day to day operations of PCSP; and (iii) Plaintiff would invest the capital for the business operations.  The parties' agreements were verbal and not documented.

Plaintiff contributed $66,145.50 to PCSP between March and June 2006 by issuing checks payable to the Debtor.[1]  PCSP and/or the Debtor entered into a lease agreement with Dixie Properties of St. Augustine, Inc. ("Landlord") to lease the Putnam County Speedway Park and held its first racing event on May 20, 2006.  PSCP generally held racing events weekly on Friday and Saturday evenings with one special event, a Monster Truck Show, in June 2006.

PCSP carried out its operations on a cash basis and maintained minimal financial records.  It maintained a checking account at Prosperity Bank titled in the name of "PCSP LLC."  The racing events generated revenue from four sources:  (i) entry fees paid by spectators at the grandstand gate; (ii) entry fees paid at the pit gate by the participating drivers; (iii) sales of supplies, including gasoline and tires, to pit crews; and (iv) concessions sales of beer and food.  The revenues were collected throughout the evening.  Cash payments were made at the end of the evening to the winning drivers, PSCP's employees, and vendors.  A portion of the net proceeds would sometimes be placed in

---

[1] Pl's Ex. No. 1.

2

PSCP's safe for the next day's event or paid to the landlord for rent.[2] The remaining balance was deposited into PCSP's Prosperity Bank account through a night deposit.

Heather Galloway, f/k/a Heather Manning ("Galloway"), was PCSP's office manager and was instrumental in PCSP's operations from May through September 2006. She and the Debtor were dating while she was employed by PCSP and they subsequently parted ways. Galloway was primarily responsible for: (i) preparing the cash boxes for the entry gates and vendor stands; (ii) collecting revenues; (iii) distributing payments to the drivers, employees, and vendors; (iv) preparing a summary of the revenues, disbursements, and bank deposit; and (v) depositing the nightly net profits into PCSP's bank account.

Galloway, in preparing the cash boxes, withdrew petty cash from PCSP's Prosperity Bank account and distributed the petty cash amongst the boxes to create the "starting banks." The "starting banks" totaled approximately $1,840.00 for each event. She delivered the boxes to PCSP's gate and stand employees. Throughout the evening she collected the revenues from the cash boxes, brought the funds to PSCP's main office, and counted the funds.

PSCP employed Lieutenant Johnny Greenwood ("Greenwood" and Deputy Dennis Hayes ("Hayes") of the Putnam County Sheriff's Department when they were off duty to provide security and to assist with the collection, counting, and deposit of the revenues. Galloway was always accompanied by Hayes or Greenwood when she collected, counted, and deposited the revenues. Two other female PSCP employees typically worked with Galloway in the main office. Neither Plaintiff nor the Debtor was

---

[2] PSCP made rent payments of $37,800.00 in cash to the Landlord (Pl's Ex. No. 8).

3

present for the revenue collection and counting. Galloway recollected the Debtor made the nightly deposit on only two occasions.

Galloway prepared a computerized cash summary for many of the events. Some summaries were prepared by other PSCP employees and, for a few of the events, including the Monster Truck Event, no summaries were prepared. Each summary sets forth the event's gross revenues broken down by income source and the amounts distributed for "pay out" and "employee pay." The closing figure of each report represents gross revenues less the payouts and the starting banks.

The summaries reflect the gross revenues from an event ranged from $13,692.00 to $28,952.75 and the payouts ranged from $8,825.00 to $24,470.00, with an average payout of approximately $11,000.00. [3] The summaries dated May 20, 2006 through November 11, 2006 reflect PSCP received net proceeds of $191,466.70. PSCP's bank records reflect it made bank deposits totaling $178,261.00 between May 15, 2006 and November 13, 2006.[4] PSCP did not maintain complete records of the recipients or amounts of the payouts.

Galloway precisely detailed her day to day duties with PSCP and actions. She testified she always deposited all of the funds remaining after payouts were made and was not directed to hold back any funds, with one exception. She was instructed to turn over the net proceeds of the Monster Truck event to the Plaintiff and his wife, which she did. She did not witness the Debtor taking any funds or using funds for personal purposes. Her testimony was credible.

---

[3] Pl's Ex. Nos. 4, 5.
[4] Pl's Ex. Nos. 4, 6.

The parties' relationship deteriorated in June 2006 with Plaintiff alleging the Debtor was mishandling the racing revenues. PSCP held its last racing event on November 14, 2006 and ceased operations. Plaintiff instituted a Florida State Court civil action against the Debtor alleging civil theft, breach of fiduciary duty, and other causes of action. The Debtor filed for Chapter 7 protection on February 12, 2008 thereby staying the state court litigation. No final adjudication of the Plaintiff's civil action was rendered by the Florida State Court.

### *Adversary Proceeding*

Plaintiff asserts the Debtor is indebted to him in the amount of $42,966.95 and such amount is nondischargeable pursuant to 11 U.S.C. Section 524(a)(4) (Doc. Nos. 1, 40). Plaintiff contends the Debtor, as the managing member of PSPC, was a fiduciary and breached his fiduciary duties to PCSP and the Debtor by:

(i)    depositing Plaintiff's capital contributions into a personal bank account and using the funds for personal expenses;

(ii)   failing to make monetary capital contributions to PSCP;

(iii)  hiring personal friends without Plaintiff's consent;

(iv)   failing to properly account for and deposit event revenues; and

(v)    misappropriating business revenues for personal expenses.

Plaintiff has the burden of establishing by a preponderance of the evidence the alleged indebtedness arose from fraud or defalcation committed by the Debtor while acting in a fiduciary capacity. Plaintiff did not allege embezzlement or larceny. Plaintiff did not establish the Debtor was a fiduciary as defined by Federal bankruptcy law.

### *Fiduciary Relationship Element*

The parties explicitly agreed the Debtor would act as the managing member of PSCP, controlling its day to day operations and monies. The Debtor acted as PSCP's managing member and Plaintiff did not actively participate in the business. The Debtor, as managing member, owed PSCP and Plaintiff fiduciary duties of loyalty and care pursuant to Florida statutory law. The statutory fiduciary duties specified for managing members do not rise to the level of fiduciary duty required for the nondischargeability of a debt for Section 523(a)(4) purposes. A fiduciary relationship for Section 523(a)(4) purposes does not exist without an express or technical trust.

Plaintiff did not plead or establish the existence of an express or technical trust. Plaintiff did not establish: (i) a segregated trust res; (ii) an identifiable beneficiary; and (iii) affirmative trust duties created by contract or by statute. The Debtor, although he owed fiduciary duties to PSCP and Plaintiff pursuant to Florida statutory law, those duties were limited and did not involve the administration of a technical or express trust or the control of a segregated res. Plaintiff failed to establish any type of trust or trust agreement.

The parties embarked on a business venture based solely upon verbal communications. They failed to institute and follow company formalities. The Debtor, by agreement of the parties, was not required to make monetary capital contributions and contributed "sweat equity" to PSCP as its managing member. No formalized procedures or controls were created regarding Plaintiff's capital contributions or how revenues were to be handled. Plaintiff's initial capital contributions were commingled with HMS' funds. No segregated trust res existed regarding the capital contributions or revenues.

There no identifiable beneficiaries for such funds. No affirmative contractual or statutory trust duties existed regarding any funds or assets.

Plaintiff made no objection to the Debtor's management of PSCP and continued to make capital contributions through June 2006. A dispute arose between the parties during the Monster Truck event and their relationship went sour, yet PSCP continued to operate through November 2006, apparently with Plaintiff's consent.

The Debtor was a managing member and did not have elevated fiduciary duties as defined by bankruptcy law. No express or technical trust existed. Plaintiff did not establish by a preponderance of the evidence the Debtor was a fiduciary pursuant to 11 U.S.C. Section 524(a)(4). Any indebtedness owed by the Debtor to Plaintiff is dischargeable and due to be discharged.

## CONCLUSIONS OF LAW

Plaintiff challenges the dischargeability of the alleged indebtedness of $42,966.95 pursuant to 11 U.S.C. Section 524(a)(4), which provides a debtor is not discharged from debts resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Plaintiff must establish the nondischargeability elements of Section 524(a)(4) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge are to be "strictly construed against the creditor and liberally in favor of the debtor." Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

Plaintiff, to prevail in a Section 523(a)(4) nondischargeability action, must establish: (i) the Debtor was acting in a fiduciary capacity; and (ii) while acting in a fiduciary capacity, he committed fraud or defalcation. In re Goodwin, 355 B.R. 337, 343

7

(Bankr. M.D. Fla. 2006). The fiduciary relationship must exist at the time the act creating the debt was committed. Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813, 817 (11th Cir. 2006).

Federal bankruptcy law, not state law, governs whether a fiduciary relationship exists in a Section 523(a)(4) nondischargeability action. In re Magpusao, 265 B.R. 492, 497 (Bankr. M.D. Fla. 2001). An extraordinary level of fiduciary duty must be present for a debt to be nondischargeable pursuant to Section 523(a)(4). Bar-Am v. Grosman, (In re Grosman), No. 6:05-ap-328-KSJ, 2007 WL 1526701, at *16 (Bankr. M.D. Fla. May 22, 2007). The statutory fiduciary duties of loyalty and care a managing member owes to a limited liability company and its members pursuant to Fla. Stat. Section 608.4225(1) do not meet the level of fiduciary duty required for Section 523(a)(4) purposes. Id. at *15.

The Federal Courts have found "the traditional meaning of the term 'fiduciary'— a relationship involving confidence, trust and good faith—to be far too broad for bankruptcy purposes." In re Wing, 96 B.R. 369, 374 (Bankr. M.D. Fla. 1989). "The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical trusts.'" Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993). The existence of an express or technical trust is required for a fiduciary relationship pursuant to Section 523(a)(4). In re Cuenant, 339 B.R. 262, 274 (Bankr. M.D. Fla. 2006). An express or technical trust exists when "there is a segregated res, an identifiable beneficiary, and affirmative trust duties established by contract or statute." Id.

The Debtor's duties as the managing member of PSCP do not constitute the level of fiduciary duty required by 11 U.S.C. Section 524(a). In re Grosman, at *16. Plaintiff was required to establish the existence of an express or technical trust. Id. He did not establish the existence of a segregated trust res, an identifiable beneficiary, or affirmative trust duties established by contract or by statute. Plaintiff did not establish by a preponderance of the evidence the debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4). The alleged indebtedness is dischargeable and due to be discharged.

A separate judgment in favor of the Debtor and against Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 28th day of October, 2009.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

9